**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT OWENSBORO**

**PHILIP HALSRUD** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 4:25CV-P186-JHM**

**CITY OF PROVIDENCE POLICE DEPARTMENT *et al.*** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Philip Halsrud filed the instant *pro se* action proceeding *in forma pauperis* in Webster Circuit Court. This action was removed to this Court, and Defendants Webster County Sheriff's Department, Billy Braden, Eric Elder, Clint Prow, City of Providence Police Department, Cameron Shelton, and Heath Martin filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (DN 7). Thereafter, Plaintiff filed a document which the Court construed as a motion to amend the complaint (DN 29). By prior Memorandum and Order, the Court granted Plaintiff's motion to amend the complaint and denied Defendants' motion to dismiss (DN 37). The Court ordered Plaintiff to file a second amended complaint on the Court-approved 42 U.S.C. § 1983 complaint form with the following instructions:

> The Court offers the *pro se* Plaintiff the following guidance in filing a second amended complaint. Plaintiff **must put all of his allegations in the second amended complaint form**, include all Defendants he wishes to sue in this action, and state **concisely and directly** how he believes each Defendant violated his constitutional rights. He must state factual allegations but **not** make legal arguments or legal conclusions and must not cite any case law. The second amended complaint filed on the Court-approved form will supersede, or replace, the original and amended complaint.

(Emphasis in original).

Plaintiff filed a second amended complaint against the City of Providence, Kentucky; Webster County, Kentucky; Henderson County, Kentucky; and River Valley Behavioral Health,

which he describes as a "Ky non profit organization." Therefore, **IT IS ORDERED** that Plaintiff's claims against Defendants Webster County Sheriff's Department, Braden, Elder, Prow, City of Providence Police Department, Shelton, and Martin are **DISMISSED**. The **Clerk of Court is DIRECTED to terminate** these Defendants as parties in the docket sheet.

This matter is now before the Court on initial review of the second amended complaint pursuant to 28 U.S.C. § 1915(e) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Upon review, the instant action will be dismissed for the reasons herein.

## I. SUMMARY OF FACTUAL ALLEGATIONS

In the second amended complaint, Plaintiff lists the following claims: violations of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments; violation of Title II of the Americans with Disabilities Act; and violation of 42 U.S.C. §§ 1985(2) and 1986.

Plaintiff states that he requested records from two Providence city officials in November 2024. He states that during that timeframe he was told by a receptionist at the Webster County Sheriff's Office that "if I see the sheriff in town pull up and wait to speak to them." He states that on November 21, 2024, he saw four or five Sheriff's Department cars approximately five blocks from his home. He states that he sat in his car approximately a block away for thirty minutes. He states, "After about 30 min a police dog ran down by my car. Then blue lights hit me and Eric Elder, a WC sheriff came and started telling me to exit the car or get either tazed or sprayed I dont recall which exactly. But I said he was scaring me." Plaintiff asserts, "He thru me on the car and while he was doing this officer Owens from the W.C. sheriff came over. I asked Owens to stop Elder from being so rough. I also told Owens and Elder I was following their receptionist Shirleys orders."

Plaintiff maintains that on January 7, 2025, he went to the Webster County Sheriff's Office and filed a records request with Brandi Latham for the body worn camera footage from the November 21, 2024, incident "with all 5 sheriff and communications & Cads." He states that he also asked for records from the City of Providence but that he was asked to leave.

Plaintiff states that later on January 7, 2025, "I was awoke by knock from Eric Elder saying they had a transport order. It was both a 202A and a 202B.[1] The petitioner was Eric Elder. It was signed by Judge Leonard of Webster County." He states that he had no contact with Elder other than on November 21, 2024. He states that they brought six officers to serve him. He further states as follows:

> I was compliant. I was told to get my shoes on. I retreated to my bedroom with my half naked girlfriend Janay Board. . . . Heath AKA Jon & Cameron entered thru my bedroom window. They had no warrant. The petitions were incomplete and falsified. . . . I was beat, arms twisted, kneeled on by 4 police while myself and my GF screamed. . . . Billy Braden was the sheriff in charge. He witnessed the 'mental health' pickup, beating, and authorized the sexual assault in front of neighbors and my girlfriend. . . . I was cuffed in car for an hour at some point I asked to pee. I was told not now. I asked again and Dennis Hart & Dennis Riggs asked Billy Braden. . . . Billy Braden said if he has to that bad he can use it in the front yard. . . . Hart & Riggs held plaintiffs elbows while cuffed and assisted him in removing genitals in daylight in view of neighbors & gf to expose himself in public.

Plaintiff states that he was cuffed and taken to River Valley Behavioral Health, but he asserts that River Valley Behavioral Health "said they couldn't lawfully keep Plaintiff." He reports that Hart and Riggs drove him back to jail in Webster County. He states that he was "charged with Resisting Arrest, Disorderly Conduct, Menacing, Assault 4th." Plaintiff maintains that on the following day, "I was awoke from jail in W.C. Cassie Tavarez was on zoom. I told her I plead 5th because I was removed from my house with no P.C." He states, "Cassie Tavarez from [River Valley Behavioral Health] said for this reason she can speak for me and therefore I

---

[1] Kentucky Revised Statute Chapter 202A governs hospitalization of a person with mental illness. Kentucky Revised State Chapter 202B governs hospitalization of a person with an intellectual disability.

must be admitted to Western St. Hospital. . . . I was in Western State from 1-8-25 to 1-13-25. I had from 1-7-25 to 1-13-25 had no representation, no hearing."

Plaintiff states that on January 7, 2025, when he was booked into Webster County Jail, he was "Stripped bent over and forced to cough by Chris Newsome of WC Jail. No attorney. My phone card wouldnt work, I had 2500$ bond." He states that on January 14, 2025, he was bonded out by his father "on conditions I never saw nor agreed to. No social media, no contact with victim. 7pm curfew, no leaving the state." He asserts that he had "over 12 court appearances from Jan to Nov and said everytime not guilty." He further states, "I had a trial scheduled on June 6th 2025. I arrived with 10 family members. . . . Bailiff came outside and told me the trial was vacated to allow Commonwealth to veiw BWC."

Plaintiff further maintains, "I learned Bobby Murray the Providence attorney had held ex parte hearings to quash my subpoenas against the city of Providence officials the few days before 6-6-25 trial. . . . I never had a hearing ever." He states, "I reported PREA violations to every person in Providence, Webster, State Police and no one investigated." He asserts, "The city of Providence, and Webster county officials used false police reports, incident reports, RMS reports, calls for service, dispatch notes, complaints, emails, letters, text messages, city & county devices, photos, videos, BWC to target falsely accuse arrest & destroy plaintiffs reputation. This created stigma plus." He also states that the body worn camera footage "from all sheriffs on 11-21-24 was destroyed after record request & discovery request."

Plaintiff states that in July, August, and September 2025 he "repeatedly tried to report abuse and sexual assault to KSP, Providence, Webster County officials." He states that the Webster County Attorney told him in court that he could not do anything and to go to the Kentucky State Police. Plaintiff states that on September 20, 2025, "I followed his order. I was

immediately arrested for DUI of methamphetamine. No investigation was done again for my report." He states, "I am 50 yrs old and have no history of drug use or drug charges." He reports that on September 24, 2025, "I was on zoom and said not guilty and requested attorney. I again had 2500$ bail. I was told no attorney." He continues, "The offer from Maci Branson said if D refuses to resolve today PTS is warranted based on refusal. . . . They said plead guilty & go home. . . . I plead guilty under duress."

Plaintiff states that as of August 21, 2026, "I have been almost a year with no license because Henderson Court and the DPA and prosecutors wont address my motions . . . . I filed a habeas and certiori on my own because Eric Stiff of the DPA wont talk to me." He asserts, "Judge Curlin of Henderson construed my habeas & certiori as RAP or appeals and denied them in trial court. This was the day I filed them." He states, "In both Webster & Henderson courts I have had over 20 appearances. They continue because I refuse to be charged with crimes I did not commit." He also states, "Providence refuses to follow mandatory language in their own BWC policy. Chief Ray Agent refuses at mayors approval for years to not wear one or supervise other officers. . . . City of Providence does not allow city cameras to use audio. This shows adverse inference."

Plaintiff also maintains that the City of Providence and Webster and Henderson Counties "have all 3 denied my request for ADA Title II grievance. They have all 3 stated they do not know what an ADA title II Coordinator is. They have all 3 denied my accomadations under 'regarded as disabled' status. They are all non compliant with federal statutes." He states, "I am a qualified individual with a disability. The defendants are public entities or agents of public entities. They denied me acsess to services, programs, or activities. They failed to provide ADA coordinator or have accomadations or grievance procedures."

Plaintiff also reports that on January 24, 2024, he filed an open records request with the City of Providence. He states, "Ray Agent the Prov. police chief took those records directly to my father Allen Halsrud instead of following KORA and asked him on 7-24-2024 to involuntarily commit me for mental health. My father said absolutely not. He stated he knew I was not dangerous." He continues, "Following this Butch Hackney the mayor told over 5 people to arrest me if I kept returning to city hall. . . . The city officials refused buisness and services and police escorted me out on multiple occasions."

As relief, Plaintiff seeks compensatory and punitive damages.

## II. STANDARD

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the instant action. 28 U.S.C. § 1915(e); *McGore*, 114 F.3d at 608-09. Upon review, the Court must dismiss a case at any time if it determines that an action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). This Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, the duty "does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

## III. ANALYSIS

### *A. 42 U.S.C. § 1983*

Plaintiff's claims for violations of his constitutional rights are brought under § 1983. Section 1983 creates a cause of action against any person who, under color of state law, causes the deprivation of a right secured by the Constitution or the laws of the United States. A claim under § 1983 must therefore allege two elements: (1) the deprivation of federal statutory or constitutional rights by (2) a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Absent either element, no § 1983 claim exists. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

#### *1. Defendants City of Providence and Webster and Henderson Counties*

A municipality or county cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal or county liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v.*

*Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

The Court has carefully reviewed the second amended complaint and finds only one claim which asserts a county or municipal policy. Plaintiff alleges that the City of Providence does not require officers to wear body cameras and that the City does not allow city cameras to use audio. However, failure to require body worn cameras does not state a constitutional violation. *See Jones v. Louisville/Jefferson Cnty. Metro. Gov't*, No. 3:18-CV-265-RGJ, 2022 U.S. Dist. LEXIS 148924, at *10-11 (W.D. Ky. Aug. 19, 2022) ("Failing to provide cameras or record footage cannot alone be a constitutional violation.") (collecting cases); *Harris v. Trent*, No. 3:25-cv-00019, 2026 U.S. Dist. LEXIS 42416, at *9 (W.D. Pa. Mar. 2, 2026) ("[T]here is no freestanding federal constitutional right—under the Fourteenth Amendment or otherwise—to have police activity recorded."). Therefore, Plaintiff's claim based on the City of Providence's failure to require body worn cameras fails to state a constitutional violation and must be dismissed for failure to state a claim.

Plaintiff's other allegations against the City of Providence and Webster and Henderson Counties which could support a § 1983 claim are as follows: being verbally threatened and thrown on a car on November 21, 2024, being denied a request for body worn camera footage, being subjected to excessive force and made to expose himself on January 7, 2025, being subjected to a strip search when he entered Webster County Jail, being denied the opportunity to file a Prison Rape Elimination Act (PREA) claim, being falsely arrested, being subjected to retaliation, and being refused services. Plaintiff does not allege that these actions occurred as a

result of a policy or custom implemented or endorsed by the City of Providence or Webster or Henderson County. They are incidents affecting only Plaintiff. Therefore, the remaining claims alleged in the second amended complaint against these Defendants must be dismissed for failure to state a claim upon which relief may be granted.

The Court acknowledges that it may allow a plaintiff to amend the complaint to state allegations against individual Defendants even when the complaint is dismissed. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[A] district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the [Prison Litigation Reform Act])." However, the Court has already allowed Plaintiff to file a second amended complaint and specifically instructed him that he must put all of his allegations in the second amended complaint form and include all Defendants he wishes to sue in this action and informed him that his second amended complaint would supersede his original and amended complaint. The Court will not allow further amendment.

Plaintiff also makes allegations concerning various actions taken in pending criminal cases against him in Webster and Henderson Counties. However, *Younger v. Harris* "requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings." *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008) (citing *Younger v. Harris*, 401 U.S. 37, 40-41 (1971)). "The *Younger* abstention doctrine provides that a federal court should abstain from interfering in a state court action when (1) there is an ongoing state judicial proceeding, (2) the state proceeding implicates important state interests, and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Graves v. Mahoning Cnty.*, 534 F. App'x 399, 406 (6th Cir. 2013) (citing *Fieger v. Cox*, 524 F.3d 770, 775 (6th Cir. 2008); *Am. Family Prepaid Legal Corp. v. Columbus Bar

*Ass'n*, 498 F.3d 328, 332 (6th Cir. 2007)). All three factors supporting abstention are present in this case. *See generally Younger*, 401 U.S. at 40-41 (counseling against interference in state criminal actions); *Frost v. Nessel*, 712 F. Supp. 3d 1008, 1013 (W.D. Mich. 2024) (finding that "the state prosecution against [the plaintiff] also serves an important state purpose—specifically, [the state]'s right to enforce its criminal laws"). Additionally, there is no indication that constitutional claims could not be raised in those proceedings. *Id.* ("The state prosecution provides [the federal plaintiff] with adequate opportunities to raise constitutional challenges and any other challenges in a competent forum."). Therefore, Plaintiff's claims are barred by *Younger* abstention doctrine.

To the extent Plaintiff may have been convicted on some charges, claims challenging charges for which he has been convicted are barred by the doctrine announced in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Under the *Heck* doctrine, a state prisoner may not file a § 1983 suit for damages or equitable relief challenging his conviction or sentence if a ruling on his claim would render the conviction or sentence invalid, until and unless the conviction or sentence has been reversed on direct appeal or otherwise invalidated. *Heck*, 512 U.S. at 486-87; *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Therefore, any claim Plaintiff may be raising based on actions taken in a case where he has been convicted is barred by *Heck.*

***2. River Valley Behavioral Health***

Plaintiff's allegations against River Valley Behavioral Health are that he was taken there on January 7, 2025, but that River Valley Behavioral Health "said they couldn't lawfully keep Plaintiff." He reports that Hart and Riggs drove him back to jail in Webster County. He states that the following day he told Cassie Tavarez, who he indicates is employed with River Valley Behavioral Health, that he "plead[ed] the 5th" and for this reason Taverez "said for this reason

she can speak for me and therefore I must be admitted to Western St. Hospital. . . . I was in Western State from 1-8-25 to 1-13-25."

Even if the Court were to assume for purposes of this initial review that River Valley Behavioral Health was a state actor under § 1983, to state a § 1983 claim against a private entity, analogous to municipal liability, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability" of the entity under § 1983. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Plaintiff's claim against River Valley Behavioral Health fails because he has not alleged a discernible constitutional violation against River Valley Behavioral Health or alleged that any action was motivated by a policy or custom of River Valley Behavioral Health. Therefore, Plaintiff's claim against this Defendant must be dismissed for failure to state a claim upon which relief may be granted.

### *B. Title II of ADA*

Title II of the ADA states as follows: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff must show three elements to establish a violation of the ADA: (1) that he is a "qualified individual with a disability"; (2) that he was "excluded from

participation in or denied the benefits of a public entity's services, programs, or activities"; and (3) that he was excluded or denied benefits "by reason of such disability." *Weinreich v. Los Angeles Cty. Metro. Trans. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

Upon review of the facts alleged by Plaintiff, other than his conclusory statement, "I am a qualified individual with a disability," Plaintiff does not state any facts concerning his disability or state what his disability is. Conclusory allegations are not entitled to the assumption of truth. *See Tackett*, 561 F.3d at 488; *Abner v. Focus: Hope*, 93 F. App'x 792, 793 (6th Cir. 2004) (stating that the court is not "required to accept non-specific factual allegations and inferences or unwarranted legal conclusions"). Moreover, Plaintiff does not state what services, programs, or activities he was denied or state any facts to support that he was denied any benefit "by reason of a disability." *See Iqbal*, 556 U.S. at 678 (complaint not sufficient "'if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Twombly*, 550 U.S. at 555, 557). Therefore, Plaintiff's ADA claim must be dismissed for failure to state a claim upon which relief may be granted.

***C. 42 U.S.C. §§ 1985(2) and 1986***

There are two clauses to § 1985(2). The first clause addresses intimidation of parties and witnesses in federal court proceedings, which does not appear to be applicable to this case since Plaintiff makes no allegation concerning a federal proceeding. The second clause prohibits "two or more persons [from] conspir[ing]" to interfere with state judicial proceedings "with the intent to deny any citizen the equal protection of the laws." § 1985(2). The acts which are alleged to have deprived the plaintiff of equal protection "must be the result of class-based discrimination." *Vakilian v. Shaw*, 335 F.3d 509, 518-519 (6th Cir. 2003) (citing *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992)). This language requires that there be "some racial, or

perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Alexander v. Rosen*, 804 F.3d 1203, 1207-08 (6th Cir. 2015) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Plaintiff does not allege any action in the complaint was motivated by racial animus nor does Plaintiff even state his race. To the extent he may be alleging that any action was motivated by his status as a disabled person, § 1985 does not apply to disability-based discrimination. *Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th Cir. 2022). Therefore, Plaintiff's claim under § 1985 must be dismissed for failure to state a claim.

A cause of action under § 1986 is based on the violation of § 1985. *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (explaining that a "§ 1986 claim is derivative and conditioned on establishing a § 1985 violation"). As this Court has concluded that Plaintiff has not stated a § 1985 claim, Plaintiff's claim under § 1986 must also be dismissed for failure to state a claim.

***D. "AOC Jon Doe Defendants"***

Plaintiff includes in his attachments to the second amended complaint three pages making allegations against "AOC[2] Jon Doe Defendants." He lists five Jon Doe Defendants. However, he does not name them in the caption or in the Defendants section of the complaint form nor does he associate these allegations with any portion of the complaint form. Therefore, the Court does not consider them to be Defendants to this action. If Plaintiff wishes to file an action against these Defendants, he must do so in a separate action.

[2] The Court presumes that Plaintiff is referring to the Kentucky Administrative Office of the Courts.

## IV. CONCLUSION

Accordingly, the Court will dismiss the action and deny all pending motions as moot by separate Order.[3]

Date: October 30, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiffs, *pro se*
4414.010

[3] The Court reviewed Plaintiff's pending motions (DNs 38 and 42) and finds no grounds to negate the dismissal of this action for the reasons stated herein.